[Philadelphia, February 9, 1835.]

## DONAHUE *against* DOUGHERTY.

#### IN ERROR.

In an action against a clergyman to recover the penalty for marrying a minor without consent of his parent, under the act of 1729, the plaintiff filed a statement, to which the defendant demurred : and afterwards a declaration in debt, which he was allowed by the court to substitute for his statement, and judgment of *respondeat ouster* was entered on the demurrer.

Held, that the statement being unauthorised by the act of assembly was a nullity, and the plaintiff might declare as though no legal specification of the cause of action had been made, and the judgment of *respondeat ouster*, though unnecessary, did not vitiate the subsequent proceedings. Nor was the verdict bad as being founded in part on the defective statement, which was a mere nonentity and entirely superseded by the declaration.

A judgment after a trial, on the merits, is not to be treated as erroneous, because there was no plea.

A writ in *debt* is within the remedy prescribed by the act of 1729, by " bill, plaint or information."

The grievance, to entitle the plaintiff to recover, is not necessarily an actual and specific damage ; it is sufficient that the marriage is an unjustifiable interference with the relation existing between the parent and his offspring, and in that aspect, a grievance in contemplation of law. Per Gibson, C. J.

It is no defence that the clergyman misconceived the age of the person married.

The District Court for the City and County of Philaeelphia, has jurisdiction of this action ; it being a civil remedy for a private injury.

Error to the District Court for the City and County of Philadelphia.

This was debt brought by *Dougherty* against the Reverend *T. J. Donahue* to recover the penalty of fifty pounds, for marrying his

(Donahue *v.* Dougherty.)

infant son without his consent.    On the 28th April, 1831, the plaintiff filed the following statement of his claim.

" The defendant is a clergyman, and on the 13th day of February, 1831, at the city of Philadelphia, united in matrimony and joined in marriage, *Thomas B. Dougherty,* a son of the plaintiff, under the age of twenty-one years, with *Ann M'Callister,* without the knowledge or consent of the said plaintiff.

" For this wrong the plaintiff claims damages in the sum of fifty pounds, according to the provisions of the act of assembly in such case made and provided."

On the 8th of June, 1831, the defendant filed a general and special demurrer to this statement.

The plaintiff afterwards on the 12th July, 1831, filed a declaration in debt, and entered a rule on the defendant to plead.

On the 4th March, 1832, the defendant pleaded " not guilty with leave."

On the 10th March, 1832, the Court below allowed the plaintiff to amend by substituting his declaration, filed 12th July, 1831, for the statement, and the plaintiff having joined in demurrer, judgment of *respondeat ouster* was entered, and a rule granted on the defendant to plead in six days.

Afterwards, on the 26th October, 1832, the cause came on to be tried, and a verdict was found for the plaintiff, for one hundred and thirty-three dollars, and thirty three cents.

On the trial, the plaintiff gave in evidence the testimony of three witnesses, *Rosanna Pollock, Samuel M'Collin* and *Mary Toole:* the first of whom testified that she knew that the plainplaintiff's son *Thomas,* was born on the night on which the news of peace between this country and Great Britain arrived, to wit, on the 15th of February, in the year 1815.    That he was about sixteen years of age when joined in marriage by the defendant.    *M'Collin* testified that the plaintiff's son, was joined in marriage to a young lady by the defendant in February, 1831, about seven o'clock in the evening, at the apartment or room of defendant: that there were a candle and a fire burning in the room : that the plaintiff's son was wrapped in a large cloak, and was about five feet ten inches in height : that the witness should have judged him to have been then upwards of twenty one years of age : that he told the witness, that the plaintiff's son was twenty-one years of age : that the clergyman (the defendant,) did not inquire his age, and that the defendant did not ask nor receive any pay or fee for performing the ceremony, that he saw or knew of.    *Mary Toole,* the third and last witness examined by the plaintiff, testified, that she was present when the defendant joined in marriage the plaintiff's son to *Ann M'Callister* : that the defendant asked him no questions as to his age : that according to the witness's judgment, the plaintiff's son, was twenty-one or twenty-two years old, and that he alleged he was of such age.

(Donahue *v.* Dougherty.)

· The counsel for the defendant requested the judge to charge the jury, that the plaintiff to sustain this action against the defendant, should prove, · first, that the plaintiff, was grieved by this act, of the defendant in joining his son in marriage: secondly, that if the the defendant had good reasons to believe from the appearance of the son, or if the jury believed that the defendant honestly thought, that he was twenty-one years of age, then the plaintiff could not recover; thirdly, that there was not sufficient evidence of the birth of the plaintiff's son, or of his minority at the time of the marriage, produced or given by the plaintiff to the jury; fourthly, that an infringement of the act of assembly, in such case was an offence, the penalty for which was to be recovered by bill, plaint or information, by the person or persons, who could show, that he she or they was or were grieved, and that the clergyman had not made such publication as was required by the said act of assembly, and that the penalty could not be recovered in a civil action of debt for fifty pounds.

·The judge charged the jury that,

The plaintiff need not make such proof of *grievance or* of tuition.

That the plaintiff could recover even if the defendant were mistaken, for he married them at his peril. ·

That the jury must judge for themselves as a matter of fact whether the testimony was sufficient to prove the birth and minority of the plaintiff's son, and—

That the plaintiff could recover in the form of action (of debt for fifty pounds) which he had adopted.

The defendant excepted to this opinion of the Court, and assigned for error as follows:

1st. The Court below erred in overruling the general and special demurrers to the statement filed by the plaintiff below, and in entering judgment of *respondeat ouster* against the defendant below.

2nd. The Court below erred in allowing the plaintiff below to amend by substituting for his statement, the declaration filed on the 12th of July, 1831, because,

*First.* Being a penal action, no amendment was allowable therein. *Secondly.* Because the declaration sets forth a new and different cause of action, from that set forth in the statement.

3d. There is error in this, that the writ and declaration are in debt, whereas the act of assembly prescribes the remedy to be by bill, plaint or information.

4th. The Court below erred in charging the jury:

*First.* That the plaintiff below need not make proof of *grievance* by him suffered, by reason of his son's marriage nor of tuition

(Donahue *v.* Dougherty.)

in or by him, of such son. *Secondly.* That the plaintiff below could recover in this action, although the defendant had been honestly mistaken as to the age of the minor; and that he married the parties at his risk. *Thirdly.* That the plaintiff below could recover in the *form* of action pursued by him.

5th. The verdict being general upon both declarations, and the first being defective and bad, the judgment cannot be supported.

6th. The plaintiff's statement being for a "*wrong*," claiming damages in the sum of fifty pounds, the plea filed on the 4th March, 1832, by the defendant, follows the statement, and is "not guilty." But the Court below having allowed the plaintiff, on the 10th of March, 1832, to substitute the narr. in debt, previously filed, and granted a rule to plead in six days, no plea was pleaded to the substituted narr., consequently, there being no issue, the judgment cannot be supported.

*Troubat* and *Haly* for the plaintiff in error argued:

1. The objection which first occurs to the judgment and proceedings here, is, that not only the act of assembly on which the action is founded, is antiquated and unadapted to our present condition, (however salutary it might have been a century ago,) but it is utterly incongruous to impose a penalty under it on a clergyman or justice, for going through a ceremonial which this court have declared to be superfluous, and which might be performed as effectively *without* as *with* their interference. Marriage, however sacred as a religious rite, is, according to the law of Pennsylvania, but a civil contract which may be completed by any words in the present time, without regard to form. *Hantz v. Seely,* 6 *Binn.* 405. This decision nullifies the act of assembly in question, and declares the aid of either the ecclesiastic or judicial functionary superfluous. Where minors thus marry, the contract is either void, voidable, or perfect. If perfect, then the clergyman or magistrate is useless, except as a mere witness; and it is manifestly incongruous to inflict a penalty for doing an act which superadds no mischief or injury which would not have occurred without their ministry.

The first section of the old act (1700) speaks of twelve witnesses, (one being a justice,) and imposes a fine of twenty pounds on the person marrying, five pounds on each witness, and the payment of *damages to the* party grieved. The latter may proceed for damages if he decline suing for the penalty. (Per TILGHMAN, C. J. 14 *Serg. & Rawle,* 289.)

The second section of the act of 1729-30, speaks thus: "If any justice of the peace, clergyman, minister, or *other* person shall take upon him to join in marriage, &c. or if any justice of the peace shall be *present at* and subscribe his name as a *witness* to any marriage," &c. Now since the decision above cited, the contract derives no validity from the presence of a clergyman or justice, and the provi-

(Donahue v. Dougherty.)

sion is therefore nugatory. Besides, the law *itself* is absurd, inasmuch as by its *terms,* a clergyman is liable for marrying "*any person,*" whether a minor or adult, without publication.

2. The District Court had no jurisdiction of this action.

By the act of March, 1811, section 1, 2, constituting that court, it is invested with jurisdiction of " all *civil* pleas and actions, real, personal, and mixed," and the jurisdiction of the Common Pleas in all *civil* actions when the sum in controversy shall exceed one hundred dollars is determined.

If this be not a *civil* plea or action, then there is no jurisdiction.

Throughout the act of 1729–30, the act here alleged to have been performed by the plaintiff in error, is characterized as an *offence.* The decisions upon it speak of it as such, and declare that the object of the law was not so much to compensate for the injury, as to deter all persons from being *accessory* to clandestine marriages. For this purpose a certain *penalty* was thought to be the best remedy. 14 *Serg. & Rawle,* 288, 289. The court there treated it as a *penal* law, and subject to a strict construction.

The District Court has no jurisdiction of forfeited recognizances. *Wharton's Dig.* 158, pl. 181. *Schaffer* v. *McNamee,* 13 *Serg. & Rawle,* 44, will apply to show want of jurisdiction. It was an action of debt against the sheriff before a justice for an escape, and was not sustained because it was for " a penalty for official misfeasance." See *Zeigler* v. *Gram,* ibid, 102. *Davy* v. *Baker,* 4 *Burr.* 2471. Debt on the statute against bribery is called a *criminal* charge. The cases that decide the question of the right to arbitrate, determine this. *Whart. Dig.* 39. *Roop* v. *Meek,* 6 *Serg. & Rawle,* 542. *Buckwalter* v. *United States,* 11 *Serg. & Rawle,* 193. So as to removal of causes. *Whart. Dig.* 148, 149, pl. 66, 67. 2 *Yeates,* 352.

Nor do the words in the act designating the remedies by " bill, plaint, or information," aid the jurisdiction, but the contrary. The two latter are not adapted for that court. " Bill" means bill of Middlesex. At the time of the act imposing this penalty, the act of 1724–25, " to *regulate the practice upon writs of* summons and arrest," had been in force several years, and the proceedings for this penalty would have been accommodated to that practice, had the legislature intended them to partake of the nature and incidents of civil actions or pleas. It is therefore clear that this statute, if to be enforced at all, can only be enforced *now* in the courts wherein they could be enforced when the act was passed.

3. The court erred in overruling the demurrer and allowing the plaintiff below to amend by substituting a declaration for a statement.

1st. Because being a *penal* action, it was not within the act of 1806, regulating amendments. *Buckwalter* v. *United States,* 11 *Serg. & Rawle,* 193.

2d. Because the substituted declaration sets forth a new and differ-

ent cause of action. The act was not intended for such cases. 5 *Binn.* 53. 2 *Serg. & Rawle*, 1. *Diehl* v. *M'Glue*, 2 *Rawle*, 337.

Here the statement obviously sets forth no cause of action whatever, as is apparent by the demurrer which exhibits its entire insufficiency in substance and form. If it contains no cause of action whatever, then if the substituted paper contains any cause of action, in the words of the decision, it must set forth a *new* one, and is therefore inadmissible.

4. The fifth and sixth errors assigned were not waived below, by pleading and going to trial, because these acts were involutary and under compulsory rules for those purposes, as appears by the record. Free from this objection the errors are sustained by long settled and innumerable decisions.

*Brewster* for the defendant in error, having cited *Norris* v. *Pilmore*, 1 *Yeates*, 408, was stopped by the court, whose opinion was delivered by

GIBSON, C. J.—A statement in an action like the present, being unauthorized by the act of assembly, is a nullity; consequently the court could not prevent the plaintiff from declaring as he might have done originally, and as if no attempt at legal specification of the cause of action had been made. This not only relieves us from a consideration of the questions of amendment, but disposes also of the demurrer to the statement; for though the judgment of *respondeat ouster* was unnecessary, it did not vitiate the subsequent proceedings. Nor is the verdict bad as being founded in part on the defective statement which was entirely superseded by the declaration, or if permitted to remain on the record, was a legal nonentity. The original plea of not guilty, which, when pleaded to an action of debt, is equivalent to what was formerly called a horse plea, might have been disregarded and the party ruled to plead as at first; which however was not done. But conceding it to be a nullity as it certainly was, it does not follow that the judgment after a trial on the merits, is to be treated as erroneous for the want of a plea, which was held to be cured by the verdict in *Sauerman* v. *Weckerly*, 17 *Serg. & Rawle*, 116. Nor is the allegation of variance between the writ in debt and the prescribed remedy ' by bill, plaint, or information,' better founded, the first and second of these terms, according to the English practice from which they are borrowed, indicating a remedy by action without specifying its form.

The objections to the charge are equally groundless. The penalty is given to the ' person or persons grieved;' but the grievance to be redressed is not necessarily an actual and a specific damage, it being sufficient that the marriage is an unjustifiable interference with the relation existing between the parent and his offspring, and, in that aspect, a grievance in contemplation of law. To say nothing of education and nurture superseded by the obtrusion of a

(*Donahue v. Dougherty.*)

new relation into the family, the deprivation of the right gone by forever, to participate by counsel and advice in the formation of a connexion involving the happiness or misery of a child, may be numbered with the severest injuries that can be inflicted on a parent. Neither could the defendant insist on his own misconception of the son's age. The law has furnished a guide for doubtful cases by which a minister or magistrate may proceed securely; and when he forsakes it for the guidance of his senses, he proceeds at his peril. Nothing but compliance with the injunctions of the statute, or fraudulent representations by the parent producing a departure from it, can protect him.

The exception to the jurisdiction is founded on the act creating the District Court, which gives it power to hear and determine 'all *civil* pleas and actions;' and it is affirmed that an action for a penalty such as this, is not a civil plea, but a criminal prosecution. It is however clearly within the letter of the second section, which directs " all suits and causes" depending in the Common Pleas, to be transferred to this court, and which therefore qualifies the sense of the word 'civil' wherever it occurs in the act. Now it is impossible to believe that the present is not only a suit but an action; and it is clearly within one of the terms used by the legislature who contemplated, without regard to technical subtleties, the removal of all causes which presented the appearance of a private claim prosecuted on the civil side of the court. But whatever may be the character of an action purely popular, yet where a penalty is given, as in this case, to the party injured, an action for it cannot be considered as a prosecution for a public wrong, but as a civil remedy for a private injury; and so it was held in *Norris* v. *Pilmore*, 1 *Yeates*, 408, cited by the counsel for the defendant in error. The authority of that case is unquestionable and conclusive; so that the exception to the jurisdiction is not sustained.

Judgment affirmed.